TROY LAW, PLLC
*Attorneys for the Plaintiff, proposed FLSA Collective and potential Rule 23 Class Plaintiff*
John Troy (JT 0481)
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
johntroy@troypllc.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

Jianhui Hu, Zhizhong Liu, Jinquan Yin, and Xing Xing, *on behalf of themselves and others similarly situated,*
Plaintiffs,

v.

226 Wild Ginger Inc. d/b/a Wild Ginger, 51 Wild Ginger Inc. d/b/a Wild Ginger, Wild Ginger NY Inc d/b/a Wild Ginger, Yong Qiu, Shan You Chen a/k/a Hsan You Chen, and Fei Chen,
Defendants.

----------------------------------------------------------------x

**Case No: 17-cv-10161**

**29 U.S.C. § 216(b) COLLECTIVE ACTION & FED. R. CIV. P. 23 CLASS ACTION**

**COMPLAINT**

Plaintiffs Jianhui Hu, Zhizhong Liu, Jinquan Yin, and Xing Xing, (hereafter referred to as "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorney, Troy Law, PLLC, hereby brings this complaint against Defendants 226 Wild Ginger Inc. d/b/a Wild Ginger, 51 Wild Ginger Inc. d/b/a Wild Ginger, Wild Ginger NY Inc d/b/a Wild Ginger, Yong Qiu, Shan You Chen a/k/a Hsan You Chen, and Fei Chen, (collectively "Defendants"), and alleges as follows:

## INTRODUCTION

1. This action is brought by Plaintiffs, on behalf of themselves as well as other similarly situated employees against Defendants for alleged violations of the Fair Labor Standards Act, ("FLSA") 29 U.S.C. § 201 *et seq.* and of the New York Labor Law ("NYLL"), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2. Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, minimum wage and overtime compensation for all hours worked over forty (40) each workweek, and by retaining a portion of employees' tips.

3. Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage, (2) unpaid overtime wages, (3) the full portion of tips retained by Wild Ginger managers, (4) liquidated damages, (5) prejudgment and post-judgment interest; and/or (6) attorneys' fees and costs.

4. Plaintiffs further allege pursuant to NYLL § 650 *et seq*. and 12 New York Codes, Rules and Regulations § 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation, (2) unpaid overtime compensation, (3) unpaid "spread of hours" compensation, (4) the full portion of tips retained by Wild Ginger managers, (5) liquidated damages, (6) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (7) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (8) 9% simple prejudgment interest provided by NYLL, (9) post-judgment interest, and (10) attorney's fees and costs.

**<u>JURISDICTION AND VENUE</u>**

5. This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6. This Court has jurisdiction over state law claims asserted here pursuant to the Class

Action Fairness Act, 28 U.S.C. § 1332(d)(2), and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

8. Plaintiff Jianhui Hu was employed by Defendants to work as a deliveryman at Wild Ginger located at 226 E 51st Street, New York, NY 10022.

9. Plaintiff Zhizhong Liu was employed by Defendants to work as a deliveryman at Wild Ginger located at 226 E 51st Street, New York, NY 10022.

10. Plaintiff Jinquan Yin was employed by Defendants to work as a deliveryman at Wild Ginger located at 226 E 51st Street, New York, NY 10022.

11. Plaintiff Xing Xing was employed by Defendants to work as a deliveryman at Wild Ginger located at 226 E 51st Street, New York, NY 10022.

## DEFENDANTS

***Corporate Defendants***

12. Defendant 226 Wild Ginger Inc. d/b/a Wild Ginger was a domestic business corporation organized under the laws of the State of New York with a principal address at 226 E 51st Street, New York, NY 10022.

13. 226 Wild Ginger Inc. d/b/a Wild Ginger was a business engaged in interstate commerce that had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

14. 226 Wild Ginger Inc. d/b/a Wild Ginger purchased and handled goods moved in interstate commerce.

15. Defendant 51 Wild Ginger Inc. d/b/a Wild Ginger was a domestic business corporation

organized under the laws of the State of New York with a principal address at 226 E 51st Street, New York, NY 10022.

16. 51 Wild Ginger Inc. d/b/a Wild Ginger was a business engaged in interstate commerce that had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

17. 51 Wild Ginger Inc. d/b/a Wild Ginger purchased and handled goods moved in interstate commerce.

18. Defendant Wild Ginger NY Inc d/b/a Wild Ginger is a domestic business corporation organized under the laws of the State of New York with a principal address at 226 E 51st Street, New York, NY 10022.

19. Wild Ginger NY Inc d/b/a Wild Ginger is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

20. Wild Ginger NY Inc d/b/a Wild Ginger purchased and handled goods moved in interstate commerce.

***Owner/Operator Defendants***

21. The Owner/Operator Defendants are officers, directors, managers, majority shareholders and/or owners of the Corporate Defendants.

22. Being among the ten largest shareholders of the Corporate Defendants, the Owner/Operator Defendants are individually responsible for unpaid wages under the New York Business Corporation Law and New York Limited Liability Company Law.

23. Owner/Operator Defendant Yong Qiu (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at 226 Wild Ginger Inc. d/b/a Wild Ginger, 51 Wild Ginger Inc. d/b/a Wild Ginger, and Wild Ginger NY Inc d/b/a Wild Ginger.

24. Upon information and belief, Yong Qiu is the founder of Wild Ginger and a shareholder of Wild Ginger NY Inc d/b/a Wild Ginger.

25. Yong Qiu acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with 226 Wild Ginger Inc. d/b/a Wild Ginger, 51 Wild Ginger Inc. d/b/a Wild Ginger, and Wild Ginger NY Inc d/b/a Wild Ginger.

26. Owner/Operator Defendant Shan You Chen a/k/a Hsan You Chen (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at 226 Wild Ginger Inc. d/b/a Wild Ginger, 51 Wild Ginger Inc. d/b/a Wild Ginger, and Wild Ginger NY Inc d/b/a Wild Ginger.

27. Shan You Chen a/k/a Hsan You Chen actually hired plaintiffs, and paid wages at Wild Ginger.

28. Upon information and belief, Shan You Chen a/k/a Hsan You Chen is currently a chef at Wild Ginger and a shareholder of Wild Ginger NY Inc d/b/a Wild Ginger.

29. Shan You Chen a/k/a Hsan You Chen was the Chief Executive Officer of, and New York Alcoholic Beverage Control principal for, 51 Wild Ginger Inc. d/b/a Wild Ginger.

30. Shan You Chen a/k/a Hsan You Chen acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with 226 Wild Ginger Inc. d/b/a Wild Ginger, 51 Wild Ginger Inc. d/b/a Wild Ginger, and Wild Ginger NY Inc d/b/a Wild Ginger.

31. Owner/Operator Defendant Fei Chen (1) had the power to hire and fire employees, (2)

supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at 226 Wild Ginger Inc. d/b/a Wild Ginger, 51 Wild Ginger Inc. d/b/a Wild Ginger, and Wild Ginger NY Inc d/b/a Wild Ginger.

32. Fei Chen is the Chief Executive Officer of Wild Ginger NY Inc d/b/a Wild Ginger.

33. Fei Chen acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with 226 Wild Ginger Inc. d/b/a Wild Ginger, 51 Wild Ginger Inc. d/b/a Wild Ginger, and Wild Ginger NY Inc d/b/a Wild Ginger.

## STATEMENT OF FACTS

***Corporate Defendants are Successor Employers***

34. 226 Wild Ginger Inc., 51 Wild Ginger Inc., and Wild Ginger NY Inc all operated Wild Ginger, located at 226 E 51st Street, New York, NY 10022, during the relevant period.

35. Upon information and belief, 226 Wild Ginger Inc. operated Wild Ginger from on or about November 18, 2009 to June 29, 2016.

36. Upon information and belief, 51 Wild Ginger Inc. operated Wild Ginger from on or about June 21, 2011 to October 30, 2017, together with 226 Wild Ginger Inc. and Wild Ginger NY Inc for at least some of that time.

37. Upon information and belief, and Wild Ginger NY Inc operated Wild Ginger from on or about March 7, 2017 to the present time, together with 51 Wild Ginger Inc. for at least some of that time.

38. Throughout the relevant period, Wild Ginger has continued in substantially the same business of preparing, serving, and delivering Asian fusion cuisine.

39. Throughout the relevant period, Wild Ginger has operated out of 226 E 51st Street, New

York, NY 10022.

40. Throughout the relevant period, Wild Ginger has used substantially the same equipment.

41. Throughout the relevant period, Wild Ginger employed substantially the same work force, including Plaintiffs, to perform the same jobs under substantially the same working conditions.

42. Throughout the relevant period, when a corporation operating Wild Ginger passed the operation of Wild Ginger to a new corporation, the principal individual owners and managers would continue to exercise an interest in the new corporation.

43. For example, upon information and belief, both Yong Qiu, Shan You Chen a/k/a Hsan You Chen are shareholders in Wild Ginger NY Inc, the corporation currently operating Wild Ginger; and Shan You Chen a/k/a Hsan You Chen continues to serve as Wild Ginger's head chef with authority to hire, fire, discipline, and otherwise manage employees.

44. For the foregoing reasons, 226 Wild Ginger Inc., 51 Wild Ginger Inc., and Wild Ginger NY Inc are successor employers.

***Defendants Committed the Following Alleged Acts Knowingly, Intentionally and Willfully against the Plaintiff, the FLSA Collective Plaintiff, and the Class***

45. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees at least the New York minimum wage for each hour worked.

46. At all relevant times, Defendants knowingly and willfully refrained from informing Plaintiffs of their obligation to pay federal and New York minimum wage.

47. While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

48. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees their lawful overtime of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

49. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees their lawful spread of hours for workdays that began and ended ten (10) hours apart.

50. At all relevant times, Defendants knowingly and willfully failed to keep full and accurate records of Plaintiffs' hours worked and wages paid.

51. At all relevant times, Defendants knowingly and willfully failed to maintain a time clock or other time recording system.

52. Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for wage violations.

53. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with Time of Hire Notices in their primary languages reflecting rates of pay and payday as well as paystubs that listed the employee's name, the employer's name, the employer's address and telephone number, the employee's rate or rates of pay, any deductions made from employees' wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

54. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with statements every payday in their primary languages that accurately listed all of the following: the dates of work covered by that payment of wages; the employee's name; the name of the employer; the address and phone number of the employer; the employee's rate or rates of pay and basis thereof; the employee's gross wages; the

employee's deductions; allowances, if any, claimed as part of the minimum wage; net wages; the employee's regular hourly rate or rates of pay; the employee's overtime rate or rates of pay; the employee's number of regular hours worked, and the employee's number of overtime hours worked.

55. At all relevant times, Defendants knowingly and willfully failed to furnish Plaintiffs and similarly situated employees notice that they were claiming tip credit towards Plaintiffs' and similarly situated employees' minimum wage.

56. Pursuant to 12 NYCRR § 146-2.2 and 29 U.S.C. § 203(m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of tip credit.

57. Defendants knew that the nonpayment of wages for all hours worked and the nonpayment of wages at one and one-half time (1.5x) employees' regular rates would financially injure Plaintiff and similarly situated employees, and violate state and federal laws.

58. At all relevant times, Defendants failed to post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, and pay day.

***Plaintiff Jianhui Hu***

59. From on or about September 30, 2013 to April 28, 2017, Plaintiff was employed by Defendants to work as a deliveryman at Wild Ginger.

60. From on or about September 30, 2013 to April 28, 2017, Plaintiff's regular work schedule ran:

a. From 11:00 to 15:30 and then from 17:00 to either 21:30 (the "early shift") or 23:00 (the "late shift"), five (5) days per week. Whether Plaintiff worked the early or late shift on any given day was not fixed; and

b. From 15:00 to 21:30, six and one half (6.5) hours per day, on Sundays.

61. From on or about September 30, 2013 to April 28, 2017, Plaintiff worked approximately 48.75 hours per week.

62. From on or about September 30, 2013 to June 30, 2014, Plaintiff was paid at a flat rate of one thousand dollars ($1,000.00) per month, in cash, no matter how many hours he actually worked.

63. From on or about July 1, 2014 to April 28, 2017, Plaintiff was paid at a rate of seven dollars and fifty cents ($7.50) per hour.

64. At no time did Plaintiff receive notice that Defendants would take a tip credit against the minimum wage.

65. Throughout his employment, Plaintiff spent approximately two (2) hours per day performing non-tipped side work including mixing and refilling soy sauce, vinegar, ginger, and wasabi, loading and unloading restaurant supplies, and cutting paper for packing.

66. Defendants failed to record the time Plaintiff spent performing non-tipped side work.

67. Beginning in April 1, 2016, Plaintiff was given notice that Defendants would claim a meal credit of one hundred dollars ($100.00) per month against the minimum wage.

68. Throughout his employment, Plaintiff was paid every half month.

69. Throughout Plaintiff's employment, Defendants paid Plaintiff a portion of the tips received on credit card orders along with his semimonthly wage payments.

70. Upon information and belief, Defendants retained a portion of the tips owed to Plaintiff.

71. Plaintiff was not paid at least the minimum wage for all hours he worked during the week.

72. Plaintiff was not paid his full overtime rate for all hours worked beyond forty (40) each week.

73. Plaintiff was not paid spread of hours for all days worked longer than ten (10) hours.

74. Throughout his employment, Plaintiff was required to maintain a delivery vehicle that he used to make deliveries on behalf of Defendants. Defendants did not compensate Plaintiff for the costs to purchase and maintain this vehicle.

***Plaintiff Zhizhong Liu***

75. From on or about April 1, 2012 to April 28, 2017, Plaintiff was employed by Defendants to work as a deliveryman at Wild Ginger.

76. From on or about April 1, 2012 to October 30, 2012, Plaintiff's regular work schedule ran:

a. From 11:00 to 23:00, twelve (12) hours per day, five (5) days per week, Mondays through Fridays; and

b. From 15:00 to 23:00, eight (8) hours per day, on Sundays.

77. From on or about April 1, 2012 to October 30, 2012, Plaintiff worked approximately sixty-eight (68) hours per week.

78. From on or about November 1, 2012 to March 7, 2013, Plaintiff's regular work schedule ran:

a. From 11:00 to 15:30 and then from 17:00 to 23:00, ten and one half (10.5) hours per day, five (5) days per week; and

b. From 15:00 to 21:30, six and one half (6.5) hours per day, on Sundays.

79. From on or about November 1, 2012 to March 7, 2013, Plaintiff worked approximately fifty-nine (59) hours per week.

80. From on or about March 8, 2013 to April 28, 2017, Plaintiff's regular work schedule ran:

a. From 11:00 to 15:30 and then from 17:00 to either 21:30 (the "early shift") or 23:00 (the "late shift"), five (5) days per week. Whether Plaintiff worked the early or late

shift on any given day was not fixed; and

b. From 15:00 to 21:30, six and one half (6.5) hours per day, on Sundays.

81. From on or about March 8, 2013 to April 28, 2017, Plaintiff worked approximately 48.75 hours per week.

82. From on or about April 1, 2012 to June 30, 2014, Plaintiff was paid at a flat rate of one thousand dollars ($1,000.00) per month, in cash, no matter how many hours he actually worked.

83. From on or about July 1, 2014 to April 28, 2017, Plaintiff was paid at a rate of seven dollars and fifty cents ($7.50) per hour.

84. At no time did Plaintiff receive notice that Defendants would take a tip credit against the minimum wage.

85. Throughout his employment, Plaintiff spent approximately two (2) hours per day performing non-tipped side work including mixing and refilling soy sauce, vinegar, ginger, and wasabi, loading and unloading restaurant supplies, and cutting paper for packing.

86. Defendants failed to record the time Plaintiff spent performing non-tipped side work.

87. Beginning in April 1, 2016, Plaintiff was given notice that Defendants would claim a meal credit of one hundred dollars ($100.00) per month against the minimum wage.

88. Throughout his employment, Plaintiff was paid every half month.

89. Throughout Plaintiff's employment, Defendants paid Plaintiff a portion of the tips received on credit card orders along with his semimonthly wage payments.

90. Upon information and belief, Defendants retained a portion of the tips owed to Plaintiff.

91. Plaintiff was not paid at least the minimum wage for all hours he worked during the week.

92. Plaintiff was not paid his full overtime rate for all hours worked beyond forty (40) each

week.

93. Plaintiff was not paid spread of hours for all days worked longer than ten (10) hours.

94. Throughout his employment, Plaintiff was required to maintain a delivery vehicle that he used to make deliveries on behalf of Defendants. Defendants did not compensate Plaintiff for the costs to purchase and maintain this vehicle.

***Plaintiff Jinquan Yin***

95. From on or about March 7, 2013 to April 28, 2017, Plaintiff was employed by Defendants to work as a deliveryman at Wild Ginger.

96. From on or about March 7, 2013 to April 28, 2017, Plaintiff's regular work schedule ran:

a. From 11:00 to 15:30 and then from 17:00 to either 21:30 (the "early shift") or 23:00 (the "late shift"), five (5) days per week. Whether Plaintiff worked the early or late shift on any given day was not fixed; and

b. From 15:00 to 21:30, six and one half (6.5) hours per day, on Sundays.

97. From on or about March 7, 2013 to April 28, 2017, Plaintiff worked approximately 48.75 hours per week.

98. From on or about March 7, 2013 to June 30, 2014, Plaintiff was paid at a flat rate of one thousand dollars ($1,000.00) per month, in cash, no matter how many hours he actually worked.

99. From on or about July 1, 2014 to April 28, 2017, Plaintiff was paid at a rate of seven dollars and fifty cents ($7.50) per hour.

100. At no time did Plaintiff receive notice that Defendants would take a tip credit against the minimum wage.

101. Throughout his employment, Plaintiff spent approximately two (2) hours per day performing non-tipped side work including mixing and refilling soy sauce, vinegar, ginger, and wasabi, loading and unloading restaurant supplies, and cutting paper for packing.

102. Defendants failed to record the time Plaintiff spent performing non-tipped side work.

103. Beginning in April 1, 2016, Plaintiff was given notice that Defendants would claim a meal credit of one hundred dollars ($100.00) per month against the minimum wage.

104. Throughout his employment, Plaintiff was paid every half month.

105. Throughout Plaintiff's employment, Defendants paid Plaintiff a portion of the tips received on credit card orders along with his semimonthly wage payments.

106. Upon information and belief, Defendants retained a portion of the tips owed to Plaintiff.

107. Plaintiff was not paid at least the minimum wage for all hours he worked during the week.

108. Plaintiff was not paid his full overtime rate for all hours worked beyond forty (40) each week.

109. Plaintiff was not paid spread of hours for all days worked longer than ten (10) hours.

110. Throughout his employment, Plaintiff was required to maintain a delivery vehicle that he used to make deliveries on behalf of Defendants. Defendants did not compensate Plaintiff for the costs to purchase and maintain this vehicle.

***Plaintiff Xing Xing***

111. From on or about February 1, 2015 to September 1, 2015, Plaintiff was employed by Defendants to work as a deliveryman at Wild Ginger.

112. Throughout his employment, Plaintiff's regular work schedule ran:

a. From 11:00 to 15:30, for four and one half (4.5) hours per day, five (5) days per week.

113. Throughout his employment, Plaintiff worked approximately twenty-two and one half (22.5) hours per week.

114. Throughout his employment, Plaintiff was paid at a flat rate of twenty-six dollars

($26.00) per day, regardless of how many hours he actually worked.

115. Throughout his employment, Plaintiff was paid in semimonthly cash installments.

116. Throughout Plaintiff's employment, Defendants paid Plaintiff a portion of the tips received on credit card orders along with his semimonthly flat wage payments.

117. Upon information and belief, Defendants retained a portion of the tips owed to Plaintiff.

118. Throughout his employment, Defendants failed to provide Plaintiff with notice that they were taking a tip credit towards the minimum wage.

119. Throughout his employment, Plaintiff spent approximately one (1) hour per day, that is, about 22.22 percent of each day, performing non-tipped side work including mixing and refilling soy sauce, vinegar, ginger, and wasabi, loading and unloading restaurant supplies, and cutting paper for packing.

120. Defendants failed to record the time Plaintiff spent performing non-tipped side work.

121. Plaintiff was not paid at least the minimum wage for all hours he worked during the week.

122. Plaintiff was not paid his full overtime rate for all hours worked beyond forty (40) each week.

123. Plaintiff was not paid spread of hours for all days worked longer than ten (10) hours.

124. Throughout his employment, Plaintiff was required to maintain a delivery vehicle that he used to make deliveries on behalf of Defendants. Defendants did not compensate Plaintiff for the costs to purchase and maintain this vehicle.

## COLLECTIVE ACTION ALLEGATIONS

125. Plaintiffs bring this action individually and on behalf of all other and former non-exempt fry woks, sorters, oil woks, dishwashers, sushi chefs, waiters, and deliverymen who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in

this case (the "Collective Action Period") and who were not compensated at least the hourly minimum wage and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

**CLASS ACTION ALLEGATIONS**

126. Plaintiffs brings their NYLL claims pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23, on behalf of all non-exempt personnel employed by Defendants on or after December 31, 2015 (the "Class Period").

127. All said persons, including Plaintiffs, are referred to herein as the "Class."

128. The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P 23.

***Numerosity***

129. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

***Commonality***

130. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendant employed Plaintiffs and the Class within the meaning of the

New York law;

b. Whether Plaintiffs and Class members are paid at least the minimum wage for each hour worked under the New York Labor Law;

c. Whether Plaintiffs and Class members are entitled to and paid overtime under the New York Labor Law;

d. Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

e. Whether Defendants unlawfully retained the tips of Plaintiffs and the Rule 23 Class.

f. Whether Defendants maintained policy, pattern and/or practice of failing to provide requisite statutory meal periods;

g. Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or or timely thereafter;

h. Whether Defendants provided full and accurate paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class on each payday; and

i. At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

***Typicality***

131. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime, and

failing to pay spread of hours. Defendants' corporate wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

***Adequacy***

132. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent representing plaintiffs in both class action and wage and hour employment litigation cases.

***Superiority***

133. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications

with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

134. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.

### [Fair Labor Standards Act—Failure to Pay Minimum Wage Brought on behalf of the Plaintiffs and the FLSA Collective]

135. Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

136. At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and similarly situated employees for some or all of the hours that they worked.

137. At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the similarly situated collective action members, for some or all of the hours they worked.

138. The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall

be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

139. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

**COUNT II.**
**[Violation of New York Labor Law—Failure to pay Minimum Wage Brought on behalf of the Plaintiffs and the Rule 23 Class]**

140. Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

141. At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

142. At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and the class members for some or all of the hours they worked.

143. At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the class members, for some or all of the hours they worked.

144. Defendants knowingly and willfully violated Plaintiffs' and similarly situated Class Members' rights by failing to pay them minimum wages in the lawful amount for hours worked.

145. An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

**COUNT III.**
**[Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of the Plaintiffs and the FLSA Collective]**

146. Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

147. The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC § 207(a).

148. The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

149. Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

150. At all relevant times, Defendants had, and continue to have, a policy and practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

151. The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

152. Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff's and FLSA Collectives' labor.

153. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

**COUNT IV.**
**[Violation of New York Labor Law—Failure to Pay Overtime Brought on behalf of Plaintiffs and the Rule 23 Class]**

154. Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

155. An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) under NY Wage Theft Prevention Act, and interest.

156. At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one half times the hourly rate the Plaintiffs and the class are entitled to.

157. Defendants' failure to pay Plaintiffs their overtime pay violated the NYLL.

158. Defendants' failure to pay Plaintiffs was not in good faith.

**COUNT V.**
**[Violation of 29 U.S.C. §203(M) AND (T)—Illegal Tip Retention Brought on behalf of the Plaintiffs and the FLSA Collective]**

159. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

160. A tip is the sole property of the tipped employee regardless of whether the employer takes a tip credit.

161. The FLSA prohibits any arrangement between the employer and tipped employee whereby any part of the tip received becomes the property of the employer.

162. Retaining portions of the tips from Just Salad deliverymen to unjustly enrich the Managers and/or Owner/ Operator Defendants or using portion of the tips to pay non-tipped employees is prohibited under the FLSA.

**COUNT VI.**
**[Violation of NYLL §146-2.18 and NYLL §146-2.20— Illegal Tip Retention Brought on behalf of Plaintiffs and the Rule 23 Class]**

163. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

164. Section 196-d of the New York State Labor Law prohibits employers from demanding, accepting, or retaining, directly or indirectly, any part of an employee’s gratuity or any charge purported to be a gratuity.

165. A charge purported to be a gratuity, including charges advertised to be “delivery fee” to customers, must be distributed in full as gratuities to the service employees or food service workers who provided the service.

166. §146-2.18 provides that there shall be a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for “service” or “food service,” is a charge purported to be a gratuity.

167. NYLL §146-2.20 provides that when tips are charged on credit cards, the employer must return to the employee the full amount of the tip charged on credit card minus the pro-rated portion of the tip taken by the credit card company.

168. Employers are prohibited from unjustly enriching themselves by charging their employees a gratuities service fee charge which exceed the costs of converting credit card gratuities into cash.

**COUNT VII.**
**[Violation of New York Labor Law—Failure to Pay Spread of Time Brought on behalf of Plaintiffs and the Rule 23 Class]**

169. Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

170. The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

171. Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

**COUNT VIII.**
**[Violation of New York Labor Law—Failure to Provide Meal Periods Brought on behalf of Plaintiffs and the Rule 23 Class]**

172. Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

173. The NYLL requires that employees provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 p m. and 6 a.m. NYLL § 162.

174. Defendants failed to provide meal periods required by NYLL § 162 for every day that Plaintiffs work or worked.

175. Though the Department of Labor commissioner may permit a shorter time to be fixed for meal periods than hereinbefore provided, such permit must be in writing and be kept conspicuously posted in the main entrance of the establishment. No such permit is posted.

176. Defendants' failure to provide the meal periods required by NYLL § 162 was not in good faith.

**COUNT IX.**
**[Violation of New York Labor Law—Failure to Keep Records Brought on behalf of Plaintiffs and the Rule 23 Class]**

177. Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

178. Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for a period of not less than six years, as required by 12 NCYRR § 146-2.1.

179. As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

180. Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiff's labor.

181. Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs was not in good faith.

**COUNT X.**
**[Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice Brought on behalf of Plaintiffs and the Rule 23 Class]**

182. Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

183. The NYLL and supporting regulations require employers to provide written notice of the

rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL § 195-1(a).

184. Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or his first day of employment.

185. Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

186. Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law § 198(1-b).

**COUNT XI.**
**[Violation of New York Labor Law—Failure to Provide Pay Stubs Brought on behalf of Plaintiffs and the Rule 23 Class]**

187. Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

188. The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

189. Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after

each Plaintiff's payday.

190. Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law § 198(1-d).

**COUNT XII.**
**[Breach of Implied Contract for Reimbursement of all Costs and Expenses of Delivery Vehicle, including Depreciation, Insurance, Maintenance and Repairs Brought on behalf of the Plaintiffs]**

191. Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

192. Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including bicycles and electric bicycles.

193. Based on his personal experience and available information, Plaintiffs can document actual "out-of-pocket" vehicle related expenses of his bicycle and electricity delivery bicycle.

194. The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiff to maintain the delivery vehicle in working condition.

195. Plaintiffs purchased, maintained and repaired the bicycle and electric bicycles at their own expense.

196. Plaintiffs performed these deliveries for the sole benefit of the Defendants.

197. Defendants neither explicitly nor implicitly requested Plaintiff to cease the purchase of gasoline and/or the maintenance of the vehicle.

198. As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiffs would incur the expenses for bicycle purchase and

vehicle maintenance, in exchange for compensation from Defendants for such expenses.

199. Defendants never compensated Plaintiffs for any expenses incurred from the purchase and maintenance of the electric bicycles, and the purchase of batteries. As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiffs a reasonable sum under the afore-alleged facts.

200. Defendants owe Plaintiffs their overdue costs of delivery vehicles, cost of battery change, if applicable, and maintenance of the bicycle.

**COUNT XIII.**
**[Violations of 26 USC § 7434—Fraudulent Filing of IRS Returns Brought on behalf of the Plaintiffs and the Rule 23 Class]**

201. Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

202. 26 USC § 7434 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

203. Due to Defendants' violations of 26 USC § 7434, Plaintiffs are entitled to recover from Defendants, jointly and severally: (1) any actual damages sustained by the Plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such a filing), (2) the cost of the action, and (3) in the court's discretion, reasonable attorneys' fees.

**COUNT XIV.**
**[Violations of New York General Business Law § 349—Deceptive Acts and Practices Brought on behalf of the Plaintiffs and the Rule 23 Class]**

204. Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

205. New York General Business Law § 349 provides that if any person willfully files a

fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

206. Due to Defendants' violations of New York GBS Law § 349, Plaintiffs are entitled to recover from Defendants, jointly and severally, their actual damages or fifty dollars ($50), whichever is greater, or both such actions.

207. Plaintiffs demand the right to examine, in person or by attorney, the minutes of the proceedings of the shareholders and records of shareholders of Defendant Corporation to recover wages owed as employees of the corporation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on his own behalf and on the behalf of the FLSA Collective Plaintiff and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a) Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b) Certification of this case as a collective action pursuant to FLSA;

c) Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual

Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d) A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e) An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f) An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiff and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g) An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. § 216;

h) Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

i) Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

j) An award to reimburse Plaintiff's document out-of-pocket delivery vehicle costs, pursuant to the implied contract which arose between Plaintiff and Defendants;

k) An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

l) An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

m) The cost and disbursements of this action;

n) An award of prejudgment and post-judgment fees;

o) Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

p) Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
December 28, 2017

TROY LAW, PLLC
*Attorneys for the Plaintiff, proposed FLSA Collective and potential Rule 23 Class*

/s/ John Troy
John Troy (JT0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
Email: johntroy@troypllc.com