UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JIANHUI HU, ZHISHONG LIU, JINQUAN          :
YIN, XING XING AND YAN FENG CHENG,
                                           :
            Plaintiffs,
                                           :
      -against-                                    **REPORT AND RECOMMENDATION**
                                           :
226 WILD GINGER INC. d/b/a WILD GINGER,            17-CV-10161 (JGK) (KNF)
51 WILD GINGER INC. d/b/a WILD GINGER      :
AND SHAN YOU CHEN,
                                           :
            Defendants.
---------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE JOHN G. KOELTL, UNITED STATES DISTRICT JUDGE

## PROCEDURAL BACKGROUND

        Jianhui Hu ("Hu"), Zhishong Liu ("Liu"), Jinquan Yin ("Yin"), Xing Xing ("Xing") and

Yan Feng Cheng ("Cheng") commenced this action against 226 Wild Ginger Inc., 51 Wild

Ginger Inc. and Shan You Chen for unpaid wages and overtime compensation under the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and New York Labor Law ("NYLL").  A

default judgment was entered against the defendants and the matter referred to the undersigned

for an inquest on damages.  See Docket Entry Nos. 64 and 65.  The Court issued a Report and

Recommendation that no damages or attorney's fees be awarded.  See Docket Entry No. 84.  The

plaintiffs objected to the Court's Report and Recommendation and filed a motion for attorney's

fees and costs.  On July 31, 2020, your Honor: (1) "decline[d] to adopt the Report and

Recommendation with respect to the plaintiffs' damages"; (2) denied the plaintiffs' "motion for

attorney's fees and costs"; (3) referred the case to the undersigned "for further proceedings

consistent with this opinion"; and (4) noted that "the Court's order with respect to attorney's fees

1

does not preclude the plaintiffs' counsel from seeking fees and costs for the time spent on this matter upon the case being recommitted to the Magistrate Judge.  Such an application should be made to Magistrate Judge in the first instance."  Docket Entry No. 91.  Thereafter, the Court ordered the plaintiffs to "file their revised inquest submissions, correcting previous deficiencies and including admissible evidence in support of their request for damages and attorney's fees."  Docket Entry No. 92.  The plaintiffs filed: (a) a "Notice of Renewed Motion for Attorneys' Fees and Costs" supported by their counsel's declaration with Exhibit 1, "the Time and Billing record of time spent herein," and memorandum of law, Docket Entry Nos. 95, 96 and 97; and (b) "Plaintiffs' Revised Proposed Findings of Fact and Conclusions of Law" supported by their counsel's declaration with exhibits, Docket Entry Nos. 98 and 99.  The plaintiffs' motion for reconsideration of your Honor's "July 31 Order, that accepted the Magistrate Judge's recommendation not to award attorney's fees for prior work performed" was denied, "without prejudice to the Magistrate Judge's consideration of the plaintiffs' new motion for attorney's fees."  Docket Entry No. 100.

## FINDINGS OF FACT

The plaintiffs were employed by the defendants as deliverymen at Wild Ginger located at 226 E 51st Street, New York, NY 10022, during the following periods of time: (1) Hu, from September 30, 2013, to April 28, 2017; (2) Liu, from April 1, 2012, to April 28, 2017; (3) Yin, from March 7, 2013, to April 28, 2017; (4) Xing, from February 1, 2015, to September 1, 2015; and (5) Cheng, from November 30, 2011, to April 28, 2017.

Hu worked five full days and one one-half day, from September 30, 2013, through October 31, 2014, alternating early and late shifts, for an average of 51.5 hours per week.  Hu worked four full days and one one-half day starting on November 1, 2014, to April 28, 2017,

averaging 40 hours per week, from November 1, 2014, to December 31, 2014, 45 hours per week, from January 1, 2015, to December 31, 2015, and 40.88 hours per week, from January 1, 2016, to April 28, 2017.  From September 30, 2013, to October 31, 2014, Hu was paid a flat compensation of $1,000.00 each month, including for hours he worked in excess of 40 in a workweek.  From November 1, 2014, to April 28, 2017, Hu was paid an hourly compensation of $7.50, including for hours in excess of 40 in a workweek.  During his employment, Hu was not provided with a time of hire notice or any paystubs.

Liu worked five full days and one one-half day from April 1, 2012, through October 31, 2014, for an average of 68 hours per week, from April 1, 2012, to October 30, 2012, 59 hours per week, from November 1, 2012, to March 7, 2013, and 51.5 hours per week, from March 8, 2013, to October 31, 2014.  Liu worked four full days and one one-half day starting on November 1, 2014, to April 28, 2017, averaging 40.5 hours per week, from November 1, 2014, to December 31, 2014, and 46 hours per week, from January 1, 2015, to April 28, 2017.  From April 1, 2012, to October 31, 2014, Liu was paid a flat compensation of $1,000.00 each month, including for hours he worked in excess of 40 in a workweek.  From November 1, 2014, to April 28, 2017, Liu was paid an hourly compensation of $7.50, including for hours he worked in excess of 40 in a workweek.  Liu did not receive a time of hire notice or any paystubs during his employment with the defendants.

Yin worked five full days and one one-half day, from September 30, 2013, through October 31, 2014, alternating early and late shifts, for an average of 51.5 hours per week.  Yin worked four full days and one one-half day starting on November 1, 2014, to April 28, 2017, averaging 40 hours per week, from November 1, 2014, to December 31, 2014, and 44 hours per week, from January 1, 2015, to April 28, 2018.  From November 1, 2014, to October 31, 2014,

Yin was paid a flat compensation of $1,000 each month, including for hours he worked in excess of 40 in a workweek.  From November 1, 2014, to April 28, 2017, Yin was paid an hourly compensation of $7.50, including for hours he worked in excess of 40 in a workweek. Yin did not receive a time of hire notice or any paystubs during his employment with the defendants.

Xing worked five days per week, from February 1, 2015, to September 1, 2015.  During that period, Xing worked 19 hours per week and was paid a daily flat compensation of $26. Xing did not receive a time of hire notice or any paystubs during his employment with the defendants.

Cheng worked five full days and one one-half day per week, averaging 68 hours per week, from November 30, 2011, to October 30, 2102, 59 hours per week, from November 2, 2012, to March 7, 2013, and 51.5 hours per week, from March 8, 2013, to October 31, 2014. Cheng worked four full days and one one-half day starting November 1, 2014, to April 28, 2017, averaging 41 hours per week, from July 1, 2014, to December 31, 2014, 45 hours per week, from January 1, 2015, to December 31, 2015, and 42 hours per week, from January 1, 2016, to April 28, 2017.  From November 30, 2013, to October 31, 2014, Cheng was paid a flat compensation of $1,000 each month, including for hours worked in excess of 40 in a workweek.  From November 1, 2014, to April 28, 2017, Cheng was paid an hourly compensation of $7.50, including for hours he worked in excess of 40 in a workweek.  Cheng did not receive a time of hire notice or any paystubs during his employment with the defendants.

## LEGAL STANDARD

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.  The district court must instead conduct an inquiry in order to ascertain the amount of damages with

reasonable certainty."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir.

1999) (citation omitted).  Establishing the appropriate amount of damages involves two steps:

(1) "determining the proper rule for calculating damages on . . . a claim"; and (2) "assessing

plaintiff's evidence supporting the damages to be determined under this rule."  Id.

### FLSA

> Every employer shall pay to each of his employees who in any workweek is
> engaged in commerce or in the production of goods for commerce, or is employed
> in an enterprise engaged in commerce or in the production of goods for commerce,
> wages  . . .  not less than . . . $7.25 an hour.

> 29 U.S.C. § 206(a)(1)(C).

> [N]o employer shall employ any of his employees who in any workweek is engaged
> in commerce or in the production of goods for commerce, or is employed in an
> enterprise engaged in commerce or in the production of goods for commerce, for a
> workweek longer than forty hours unless such employee receives compensation for
> his employment in excess of the hours above specified at a rate not less than one
> and one-half times the regular rate at which he is employed.

> 29 U.S.C. § 207(a)(1).

"The regular rate of pay at which the employee is employed may in no event be less than the

statutory minimum."  29 C.F.R. § 778.107.  "The 'regular rate' under the Act is a rate per hour,"

unless an employee's earnings are determined on another basis.  29 C.F.R. § 778.109.  "The

regular hourly rate of pay of an employee is determined by dividing his total remuneration for

employment (except statutory exclusions) in any workweek by the total number of hours actually

worked by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109.

"Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be

liable to the employee or employees affected in the amount of their unpaid minimum wages, or

their unpaid overtime compensation, as the case may be, and in an additional equal amount as

liquidated damages."  29 U.S.C. § 216(b).  However,

if the employer shows to the satisfaction of the court that the act or omission giving rise to [an action under FLSA] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.

[I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

29 C.F.R. § 531.35.

"[I]n addition to any judgment awarded to the plaintiff or plaintiffs," the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

## NYLL

The basic minimum hourly wage rate was $7.25 per hour on and after January 1, 2011, $8.00 per hour on and after December 31, 2013, $8.75 per hour on and after December 31, 2014, until and including December 30, 2015, $9 per hour on and after December 31, 2015, until and including December 30, 2016, $11 per hour on and after December 31, 2016, (for employers of eleven or more employees) and $10.50 per hour on and after December 31, 2016, (for employers of ten or fewer employees). See 12 NYCRR § 146-1.2. "An employer shall pay an employee for overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek." 12 NYCRR § 146-1.4. "The spread of hours is the length of the interval between the beginning and end of an employee's workday." 12 NYCRR § 146-1.6. "On each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." 12 NYCRR § 146-1.6(a). "The term regular rate

shall mean the amount that the employee is regularly paid for each hour of work, before

subtracting a tip credit, if any."  12 NYCRR § 146-3.5(a).

> If an employer fails to pay an employee an hourly rate of pay, the employee's
> regular hourly rate of pay shall be calculated by dividing the employee's total
> weekly earnings, not including exclusions from the regular rate, by the lesser of 40
> hours or the actual number of hours worked by that employee during the work
> week.

> 12 NYCRR § 146-3.5(b).

"If an employee must spend money to carry out duties assigned by his or her employer, those

expenses must not bring the employee's wage below the required minimum wage."  12 NYCRR

§ 146-2.7(c).

NYLL requires every employer to provide written notice of the rate of pay and the basis

thereof, whether paid by the hour or otherwise, any allowances and certain other work-related

information, as well as statements, "with every payment of wages, listing" certain work-related

information, including the dates of work covered by that payment of wages and the rate of pay

and basis thereof.  NYLL §§ 195(1) and (3).  A plaintiff may recover, for the employer's failure

to provide required notices, damages not exceeding $5,000, "together with costs and reasonable

attorney's fees," under each of NYLL §§ 195 (1) and (3).  See NYLL §§ 198 (1-b) and (1-d).

NYLL Article 19 provides:

> If any employee is paid by his or her employer less than the wage to which he or
> she is entitled under the provisions of this article, he or she shall recover in a civil
> action the amount of any such underpayments, together with costs all reasonable
> attorney's fees, prejudgment interest as required under the civil practice law and
> rules, and unless the employer proves a good faith basis to believe that its
> underpayment of wages was in compliance with the law, an additional amount as
> liquidated damages equal to one hundred percent of the total of such underpayments
> found to be due. Any agreement between the employee, and the employer to work
> for less than such wage shall be no defense to such action.

> NYLL § 663(1).

"No employer shall make any deduction from the wages of an employee, except deductions which," inter alia, "are expressly authorized in writing by the employee and are for the benefit of the employee, provided that" certain conditions are met.  NYLL § 193(1)(b).

Under New York law, "[a] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the 'presumed' intention of the parties as indicated by their conduct.  It is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct."  Jemzura v. Jemzura, 36 N.Y.2d 496, 503-04, 369 N.Y.S.2d 400, 420 (1975) (internal citations omitted).

## ATTORNEY'S FEES

When exercising their discretion to determine the reasonableness of the attorney's fees sought in an action based on a federal question, courts in this Circuit use the "presumptively reasonable fee" standard.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008).  The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  In calculating the presumptively reasonable fee, a district court must consider, among others, the twelve factors articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).  See Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 190.  Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the

attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 186-87 n.3.

A reasonable hourly rate is "the rate prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Farbotko v. Clinton Cty. of N.Y., 433 F.3d 204, 208 (2d Cir. 2005) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 1547 n.11 (1984)). "Thus, 'a reasonable hourly rate' is not ordinarily ascertained simply by reference to rates awarded in prior cases." Id. "[T]he equation in the caselaw of a 'reasonable hourly fee' with the 'prevailing market rate' contemplates a case-specific inquiry into the prevailing market rates for counsel of similar, experience and skill to the fee applicant's counsel. This may, of course, include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." Id. at 209. "[T]he fee applicant has the burden of showing by 'satisfactory evidence—in addition to the attorney's own affidavits'—that the requested hourly rates are the prevailing market rates." Id. (quoting Blum, 465 U.S. at 896 n.11, 104 S. Ct. 1547 n.11). A fee application that is not supported by evidence of "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done" should normally be denied. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).

## CONCLUSIONS OF LAW

### *Damages*

Upon review of the revised inquest submissions, the Court finds that the plaintiffs corrected previous deficiencies and provided detailed explanations and evidence respecting their damages calculation.

9

Concerning the minimum wage damages under NYLL, the Court finds the following: Hu's minimum wage damages amount to $59.23 per week from September 30, 2013, to December 30, 2013, $89.23 per week from December 31, 2013, to July 1, 2014, $59.23 per week from July 2, 2014, to October 31, 2014, $20.00 per week from November 1, 2014, to December 31, 2014, $50.00 from January 1, 2015, to December 31, 2015, $60.00 from January 1, 2016, to December 30, 2016, and $140.00 per week from December 31, 2016 to April 28, 2017. Liu's minimum wage damages amount to $59.23 per week from April 1, 2012, to December 30, 2013, $89.23 per week from December 31, 2013, to June 30, 2014, $20.00 per week from July 1, 2014, to December 31, 2014, $50.00 per week from January 1, 2015, to December 31, 2015, $60.00 from January 1, 2016, to December 30, 2016, and $140.00 per week from December 31, 2016, to April 28, 2017. Yin's minimum wage damages amount to $59.23 per week from March 7, 2013, to December 30, 2013, $89.23 per week from December 31, 2013, to October 31, 2014, $20.00 per week from November 1, 2014, to December 30, 2014, $50.00 per week from December 31, 2014, to December 31, 2015, $60.00 from January 1, 2016, to December 30, 2016, and $140.00 per week from December 31, 2016, to April 28, 2017.  Xing's minimum wage damages amount to $42.75 per week from February 1, 2015, to September 1, 2015.  Cheng's minimum wage damages amount to $59.23 per week from November 30, 2011, to December 30, 2013, $89.23 per week from December 31, 2013, to October 31, 2014, $20.00 per week from November 1, 2014, to December 31, 2014, $50.00 per week from January 1, 2015, to December 31, 2015, $60.00 from January 1, 2016, to December 30, 2016, and $140.00 per week from December 31, 2016, to April 28, 2017.

Concerning overtime and spread-of-hours compensation damages under NYLL, the Court finds the following: Hu's overtime compensation damages amount to $125.06 per week from

September 30, 2013, to December 30, 2013, $138.00 per week from December 31, 2013, to

October 31, 2014, $65.63 per week from January 1, 2015, to December 31, 2015, and $11.81 per

week from January 1, 2016, to December 30, 2016, and $14.44 per week from December 31,

2016, to April 28, 2017.  Hu's spread-of-hours damages amount to $36.25 per week from

September 30, 2013, to December 30, 2013, $40.00 per week from December 31, 2013, to July

1, 2014, $32.00 per week from November 1, 2014, to December 31, 2014, $35.00 per week from

January 1, 2015, to December 31, 2015, $45.00 per week from January 1, 2016, to December 30,

2016, and $55.00 per week from December 31, 2016, to April 28, 2017.

Liu's overtime compensation damages amount to $304.50 per week from April 1, 2012,

to October 30, 2012, $125.06 per week from November 1, 2012, to December 30, 2013, $138.00

per week from December 31, 2013, to October 31, 2014, $6.00 per week from November 1,

2014, to December 31, 2014, $78.75 per week from January 1, 2015, to December 31, 2015,

$81.00 per week from January 1, 2016, to December 30, 2016, and $99.00 per week from

December 31, 2016, to April 28, 2017.  Liu's spread-of-hours compensation damages amount to

$36.25 per week from April 1, 2012, to December 30, 2013, $40.00 per week from December

31, 2013, to June 30, 2014, $32.00 per week from July 1, 2014, to December 31, 2014, $8.75 per

week from January 1, 2015, to December 31, 2015, $9.00 per week from January 1, 2016, to

December 30, 2016, and $11.00 per week from December 31, 2016, to April 28, 2017.

Yin's overtime compensation damages amount to $125.06 per week from March 7,

2013, to December 30, 2013, $138.00 per week from December 31, 2013, to October 31, 2014,

$52.50 per week from December 31, 2014, to December 31, 2015, $54.00 per week from

January 1, 2016, to December 30, 2016, and $66.00 per week from December 31, 2016, to April

28, 2017.  Yin's spread-of-hours compensation damages amount to $36.25 per week from March

7, 2013, to December 30, 2013, $40.00 per week from December 31, 2013, to October 31, 2014, $24.00 per week from November 1, 2014, to December 30, 2014, $26.25 per week from December 31, 2014, to December 31, 2015, $27.00 per week from January 1, 2016, to December 30, 2016, and $33.00 per week from December 31, 2016, to April 28, 2017.

Cheng's overtime compensation damages amount to $304.50 per week from November 30, 2011, to October 30, 2012, $206.63 per week from November 1, 2012, to March 7, 2013, $125.06 per week from March 8, 2013, to December 30, 2013, $138.00 from December 31, 2013, to October 31, 2014, $12.00 per week from November 1, 2014, to December 31, 2014, $65.63 per week from January 1, 2015, to December 31, 2015, $27.00 per week from January 1, 2016, to December 30, 2016, and $33.00 per week from December 31, 2016, to April 28, 2017. Cheng's spread-of-hours compensation damages amount to $36.25 per week from November 30, 2011, to December 30, 2013, $40.00 per week from December 31, 2013, to October 31, 2014; $24.00 per week from November 1, 2014, to December 31, 2014, $26.25 per week from January 1, 2015, to December 31, 2015, $36.00 per week from January 1, 2016, to December 30, 2016, and $44.00 per week from December 31, 2016, to April 28, 2017.

With respect to the plaintiffs' out-of-pocket expenses and based on the breach of implied contract, Hu, Yin and Cheng each spent $1,400.00 on an electric bicycle each purchased at the time each began working for the defendants.  Liu spent $1,450.00 on an electric bicycle he purchased at the time he began working for the defendants.  Xing spent $150 on maintenance for his electric bicycle during his employment with the defendants.  Concerning damages for notice violations, Hu, Liu, Yin, Xing and Cheng each are entitled to $5,000 in damages for wage statement violations and $5,000 in damages for time of hire notice violations.  The Court finds

that each plaintiff is entitled to liquidated damages and interest of 9% per year under NYLL §198(1-a).

Based on the plaintiffs' detailed calculations of damages, the Court finds that the following damages are warranted under NYLL:

Hu is entitled to a total of $101,252.10 in damages, consisting of $36,479.21 in compensatory damages, $36,479.21 in liquidated damages, $5,000 in paystub notice damages, $5,000 in time of hire notice damages, $16,893.68 in prejudgment interest, and $1,400 in out-of-pocket expenses, jointly and severally from the defendants.

Liu is entitled to a total of $152,089.17 in damages, consisting of $55,572.61 in compensatory damages, $55,572.61 in liquidated damages, $5,000 in paystub notice damages, $5,000 in time of hire notice damages, $29,493.94 in prejudgment interest, $1,450 in out-of-pocket expenses, jointly and severally from the defendants.

Yin is entitled to a total of $109,872.44 in damages, consisting of $39,567.90 in compensatory damages, $39,567.90 in liquidated damages, $5,000 in paystub notice damages, $5,000 in time of hire notice damages, $19,336.64 in prejudgment interest, $1,400 in out-of-pocket expenses, jointly and severally from the defendants.

Xing is entitled to a total of $13,372.71 in damages, consisting of $1,300.82 in compensatory damages, $1,300.82 in liquidated damages, $5,000 in paystub notice damages, $5,000 in time of hire notice damages, $621.07 in prejudgment interest, $150 in out-of-pocket expenses, jointly and severally from the defendants.

Cheng is entitled to a total of $169,245.47 in damages, consisting of $62,083.45 in compensatory damages, $62,083.45 in liquidated damages, $5,000 in paystub notice damages,

$5,000 in time of hire notice damages, $33,678.57 in prejudgment interest, $1,400 in out-of-pocket expenses, jointly and severally from the defendants.

*Attorney's Fees and Costs*

In their memorandum of law in support of the motion for attorney's fees, the plaintiffs argue that: (1) "plaintiffs are entitled for [sic] reasonable attorneys' fees and costs"; (2) "plaintiffs' application for attorneys' fees is based upon reasonable hours worked and reasonable hourly rates"; and (3) "plaintiff seeks compensable costs."  Specifically, the plaintiffs contend that they seek "fees from the time [their counsel] began client intake through the date of this application" and the "time devoted to this action by Plaintiff's counsel is set forth in detail in the contemporaneous time entries attached to the declaration of John Troy ['Troy'] that specify, for each personnel, the date, the hours expanded, and the nature of work done."  According to the plaintiffs, their counsel's hourly rates "are either on par or slightly above the rate routinely given in District Courts throughout this nation."

Troy states in his declaration that he is the principal of Troy Law PLLC ("Troy Law") and counsel of record in this action and he "instructed, supervised and ensured that all associates and employees of Troy Law, PLLC keep contemporaneous time records."  Since 1989, Troy has represented low-income individuals, mostly Mandarin-speaking immigrants, in wage-and-hour and employment discrimination cases in various courts and his law firm "spearheads the nation's wage and hour employment litigation advocacy."  According to Troy, "we are one of the largest firms in case load in the nation's Fair Labor Standards Act wage-and-hour litigation, and the largest firm in case load for the Chinese-American immigrant community."  Troy is counsel in at least 165 wage-and-hour matters in the United States District Court for the Eastern District of New York, at least 145 wage-and-hour matters in this court and 40 wage-and-hour cases in other

14

federal district courts.  Troy has published extensively on FLSA, including abroad, and is a member of the National Employment Lawyers Association and its affiliate, "NELA-NY."  Troy has been awarded $550 and $400 hourly rates in previous cases.

George Kibum Byun ("Byun") was the managing associate at the firm, who graduated from Benjamin N. Cardozo School of Law in 2015 and was admitted to the New York bar in 2015.  Byun litigated over 100 wage-and-hour actions, including complex, multi-plaintiff, collective and class actions and employment discrimination actions, obtaining favorable outcomes in numerous motion practice and settlements in several cases.  Byun also defended clients successfully in administrative proceedings and advises foreign clients on employment law.  In a non-contingent fee structure, Byun charges an hourly rate of $350.

Aaron Schweitzer ("Schweitzer") is the managing associate at Troy Law, who graduated from the Fordham University School of Law in 2016 and was admitted to the New Jersey bar in 2017 and the New York bar in 2018.  During his time with the firm, Schweitzer litigated over 99 wage-and-hour actions in the federal courts, obtaining favorable outcomes in several trials. In a non-contingent fee structure, Schweitzer charges an hourly rate of $350.

Leanghour Lim ("Lim") is an associate at Troy Law and she obtained a degree from SUNY Buffalo Law School in 2018 and a Master of Law degree in Intellectual Property Law from Benjamin N. Cardozo Law School.  Lim was admitted to the New York bar in March 2019. Lim is representing parties in 30 cases in this court.  Her hourly rate is $250.

Maggie Huang ("Huang") received her Master of Information System degree from the University of East Michigan in 1986 and Bachelor of Business degree in Public Finance in Taiwan and is a certified public accountant licensed in New York.  Huang has been awarded previously an hourly rate of $150.

15

Preethi Kilaru ("Kilaru") received an LLM degree from SMU Dedman School of Law in 2017 and has been with Troy Law since 2017.  Kilaru was awarded previously an hourly rate of $150.

Tiffany Troy ("T. Troy") has a B.A. degree from Columbia University.  She has been a "NYS Unified Court System Mandarin Chinese interpreter since 2019" and has interpreted in federal and state courts.  T. Troy's hourly rate for interpreting services is $150.

Troy submitted a table indicating that 207 hours were expended on this matter, consisting of 19.02 by Troy, 17.20 by Byun, 138.36 by Schweitzer, 6.7 by Lim, 11.99 by Kilaru, 11.90 by Huang and 1.75 by T. Troy.  Troy seeks $71,047.50 in attorney's fees and $1,165.57 in out-of-pocket expenses related to this action, including the filing fee, service of the summons and complaint, printing and postage.

Upon review of the plaintiffs' evidence in support of the motion for attorneys' fees, including contemporaneous time records, the Court finds that 207 is a reasonable number of hours to have expended on this litigation, the hourly rates requested, $550 for Troy, $350 for Byun, $350 for Schweitzer, $250 for Lim, $200 for Kilaru, $150 for Huang and $150 for T. Troy, are reasonable and the out-of-pocket expenses are also reasonable.  Thus, the plaintiffs' reasonable attorney's fees are $71,047.50 and their reasonable expenses are $1,165.57.

## RECOMMENDATION

For the foregoing reasons, I recommend that: (1) the following damages be awarded to the plaintiffs: $101,252.10 to Hu, $152,089.17 to Liu, $109,872.44 to Yin, $13,372.71 to Xing and $169,245.47 to Cheng; and (2) the plaintiffs' motion for attorney's fees, Docket Entry No. 95, be granted, and $71,047.50 be awarded in attorney's fees and $1,165.57 in expenses.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Any requests for an extension of time for filing

objections must be directed to Judge Koeltl.  ***Failure to file objections within fourteen (14) days***

***will result in a waiver of objections and will preclude appellate review.***  See Thomas v. Arn,

474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York                        Respectfully submitted,
       October 7, 2020

                                     _Kevin Nathaniel Fox_
                                     KEVIN NATHANIEL FOX
                                     UNITED STATES MAGISTRATE JUDGE